IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKY LOWE, et al. | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 18-223 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants. | : | |

McHUGH, J.                                                                                          November 19, 2018

## MEMORANDUM

The plaintiffs in this case are two African-American Philadelphians who allege that they were targeted by white police officers because of their race and then searched, beaten, arrested, and falsely charged, all in violation of the Fourth and Fourteenth Amendments. Their allegations—including that they sustained serious injuries from the encounter and that all charges against them were ultimately withdrawn—set out a strong preliminary case. Unfortunately, the attorney they hired waited until the last day of the statute of limitations period to initiate that case and then failed to serve the defendants for more than a year. Defendants now seek dismissal of all claims as time-barred. Pennsylvania rules allow a writ of summons to toll the statute of limitations, despite defective service, where the plaintiff has made a good-faith service effort and the defendants received actual notice of the litigation commenced against them. Here, Plaintiffs' attorney failed to make any service effort at all and, regrettably, Plaintiffs are bound by her mistakes.

I.  **Background**

There are two important narratives in this case. The first involves the abuse Plaintiffs claim they endured at the hands of Philadelphia police officers. The other involves the Plaintiffs'

lawyer, whom they hired believing she would adequately represent their interests in court as they sought compensation for injuries to their bodies and constitutional rights. Both narratives are critical to the resolution of the pending Motion; I begin with the Plaintiffs' alleged abuse.

According to the Complaint, Plaintiffs Ricky Lowe and Saleem Abous-Salaam walked together to Plaintiff Lowe's residence on the evening of October 27, 2014. Am. Compl., ECF No. 7. Lowe lived in the house with his sister, who owned the house, and his niece. *Id.* ¶ 6. Lowe entered the house briefly and then rejoined Salaam, who had waited for Lowe outside on the front walk. *Id.* ¶ 7, 10. At that point, two police officers in a patrol car approached Plaintiffs: Defendant Officers Opalski and Watson. *Id.* ¶ 8, 11. Lowe told the officers that he lived at the house but they did not believe him. *Id.* ¶ 19. Two more unnamed officers arrived— John/Jane Does 1 and 2—and the four officers, all white, allegedly proceeded to search, beat, and arrest the Plaintiffs, who are African-American. *Id.* ¶ 12-13, 18.

The Defendants allegedly started with Lowe and "searched, handcuffed extremely and excessively tightly, punched, struck, grabbed in a headlock, grabbed by the testicles, [and] pushed" him and then "tossed him" into their patrol car. *Id.* ¶ 13. Defendants then "searched, handcuffed extremely tightly, punched, struck, [and] pushed" Salaam, and "tossed him" into the same patrol car. *Id*. ¶ 14. At some point during Plaintiffs' "unlawful search, arrest, assault and battery," Plaintiff Lowe's sister, who is a Philadelphia police officer, arrived and confirmed that she owned the house and that Lowe lived there. *Id*. ¶ 22. With a crowd of onlookers gathering around the patrol car, and with Lowe and Salaam handcuffed inside it, Defendants decided to take Plaintiffs to the 19th Police District, where they charged them with "Disorderly Conduct – Fighting." *Id.* ¶ 23-24.

Plaintiffs deny that they were fighting and deny that there was "any evidence of any fighting, only the Defendants' beating of the Plaintiffs." *Id.* ¶ 26. The officers later claimed that, before they approached Plaintiffs, they saw Lowe look at them and then throw a gun or heavy metal object to the ground. *Id.* ¶ 9, 11. But despite searching both Plaintiffs and the area outside Lowe's home, Defendants "never found a gun, metal object, contraband, or any instrumentality of a crime." *Id.* ¶ 20. Plaintiffs assert that Defendants racially profiled them, assuming that, because Lowe and Salaam are African-American, they were engaged in some illegal activity. *Id.* ¶ 28–29. According to Plaintiffs, the gun accusation was a "pretext"—a retroactive attempt to explain the stop, beating, and arrest—developed to justify the Defendants' actions. *Id.* ¶ 30–31. Lowe and Salaam refused a plea deal to enter a Summary Diversion Program and instead moved toward trial. *Id.* ¶ 32. But, before trial, their defense attorney spoke with the assigned Assistant District Attorney and, on the same day, February 2, 2015, the ADA withdrew the charges against both Plaintiffs. *Id.* ¶ 33–34.

Once the charges were withdrawn, Lowe and Salaam acted quickly to vindicate their rights; they hired Rania Major, Esq. And so begins the other story critical to this Motion. The record shows that both Plaintiffs retained Major promptly—within six months of the incident. Lowe hired her by March 2, 2015, about four months after the incident and just one month after the charges were withdrawn. *See* Pls.' Resp. Ex. 5, at 1, ECF No. 10-5 (Letter from Rania Major to the City of Philadelphia Claims Department dated Mar. 2, 2015 informing the City that she "[has] been retained to represent [Lowe] in a claim against you for personal injuries" including a "[f]ractured left wrist and facial lacerations"). By April, Major represented both Lowe and Salaam. *See id.* at 4 (Letter from Rania Major to City of Philadelphia Claims Department dated Apr. 24, 2015 stating that she was representing Salaam in a personal injury action for a right

3

wrist injury, back injury, and facial lacerations); *see also id.* at 6 (Letter from Rania Major's Secretary Rosa Reyes to the City of Philadelphia's Risk Management Division stating about Salaam: "This is a Police Brutality Case, not a slip and fall!").

Despite this early correspondence with the City's Claims Department, Major waited until October 27, 2016—exactly two years after the incident—to file a praecipe for writ of summons on behalf of Plaintiffs in Philadelphia's Court of Common Pleas (Case No. 161003962). Five more months passed and then, without having served the writ of summons or making any effort to do so, Major filed a complaint on March 20, 2017. The complaint included a state law claim for assault and battery and claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, including excessive use of force, false arrest and false imprisonment, malicious prosecution, negligent and intentional infliction of emotional distress, and *Monell* claims. Again, Major did not serve the Defendants. It was not until December 2017, when Major filed a praecipe to reinstate the complaint, that she finally served the Defendants. In January 2018, Defendants promptly removed the case to this Court.

Defendants have now moved to dismiss Plaintiffs' Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), asserting that it is untimely. *See* Defs.' Mot. Dismiss, ECF No. 9 ["Defs.' Mot."]. In response, Major filed an affidavit from her legal secretary, Ms. Diaz, describing how and why the service of the summons, and then the complaint, fell through the cracks. *See* Diaz Aff., ECF No. 10-4. Ms. Diaz explains that the office was experiencing a staffing shortage in October 2016 when she electronically filed the original praecipe for writ of summons in Plaintiffs' case. *Id.* ¶¶ 3, 4, 7. A week before the praecipe was filed, the office receptionist's spouse was shot near the office. *Id.* ¶ 2. The receptionist took a week off to care for her spouse and ultimately decided not to return to work

4

"for safety reasons." *Id.* ¶ 3.  The office usually had an additional part-time secretary, but that position was also vacant at the time.  *Id.* ¶ 4.  These shortages left Ms. Diaz, "working alone," to "manage all deadlines and tasks," including managing the office's email account and calendar, interpreting for clients, collecting payments, managing the reception area, making post office and bank runs, and doing the substantive legal work of drafting, editing, and filing motions—apparently from start to finish—in unrelated matters.  *See id.* ¶¶ 5–9.  Ms. Diaz ran the office because Major was "typically in court daily and [did] not get to the office, if at all, until the afternoons."  *Id.* ¶ 6.  It was under these circumstances that Ms. Diaz, "overwhelmed and inundated with deadlines," forgot to check for the writ and send it to the office's usual process server to effectuate service.  *Id.* ¶ 13.  It should be noted that counsel for Plaintiffs has only summarily addressed the second prolonged delay in effectuating service—a delay of some nine months after the Complaint was filed.

## II. Standard of Review

Defendants' Motion to Dismiss is governed by the well-established standard set forth in Federal Rule of Civil Procedure 12(b)(6), as elaborated in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

Defendants assert that "Plaintiffs' failure to serve [them] with notice of this lawsuit until well over a year after initiating the action (and well over three years after the date of the incident)" warrants dismissal.  Defs.' Mot. 6.  And because the governing statute of limitations is two years, Defendants contend that dismissal should be with prejudice.  *Id.*  Major, on behalf of Plaintiffs Lowe and Salaam, responds that her clients' claims should survive because her failure to notify Defendants was an "unintentional oversight" and thus, under Pennsylvania service and

tolling rules, the initial writ of summons filed back in October 2016 should be deemed to have tolled the statute of limitations. *See* Pls.' Resp. 5, ECF No. 11. The core question, then, is whether the statute of limitations was tolled, rendering Plaintiffs' claims timely.

The statute of limitations for § 1983 claims like Plaintiffs' tracks the statute of limitations for personal injury tort actions in the state where the cause of action arose. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, that time frame is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The statute of limitations for a § 1983 claim arising in Pennsylvania is two years.") (citing 42 Pa. Cons. Stat. § 5524). Federal law dictates that "the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (internal citations omitted). Plaintiffs were therefore required to bring most of their § 1983 claims[1] by October 27, 2016, two years after their encounter with police. Major filed a writ of summons within this time frame but failed to serve the summons as required.

Pennsylvania's Rules of Civil Procedure allow a plaintiff to commence an action by filing either a complaint or a praecipe for writ of summons. Pa. R. Civ. P. 1007. The state's service rules provide that "[o]riginal process shall be served . . . within thirty days after the issuance of a writ or the filing of a complaint." Pa. R. Civ. P. 401(a). Under Rule 401(b), if a plaintiff fails to serve a writ (or complaint) upon the defendants within thirty days, as Major did here, the plaintiff can continue the writ's validity by filing a praecipe to reissue it (or to reinstate

---

[1] The exception would be Plaintiffs' malicious prosecution claims, which did not accrue, and thus the statute of limitations did not begin to run, until the criminal charges against them were withdrawn on February 2, 2015. *See Kato*, 549 U.S. at 388 (explaining that a § 1983 claim accrues "when the plaintiff has a complete and present cause of action"); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (explaining that one element of a malicious prosecution claim is "favorable termination,"—*i.e.*, that the criminal proceeding ended in plaintiff's favor). Plaintiffs thus had two years from then—until February 2, 2017—to bring those claims.

the complaint). Pa. R. Civ. P. 401(b)(1). There is no limit on the number of times a writ may be reissued. Pa. R. Civ. P. 401(b)(2).

The leniency of Rule 401 has left it prone to abuse, entangling Pennsylvania's Supreme Court in a decades-long effort to balance flexibility and fairness in determining when a writ truly commences a case so as to toll the statute of limitations. *See McCreesh v. City of Philadelphia*, 888 A.2d 664, 665–66 (2005). In the 1976 case of *Lamp v. Heyman*, the Court acknowledged that some plaintiffs would file a writ of summons and have it reissued repeatedly to toll the statute of limitations, but would "deliberately fail[] to notify the defendant of the pending litigation," thereby defeating the very purpose of the statute of limitations. *McCreesh*, 888 A.2d at 665 (citing *Lamp*, 366 A.2d 882 (1976)). To address this abuse, the *Lamp* Court held that a writ would "remain effective to commence an action," thereby tolling the statute of limitations, only if the plaintiff did not intend to "stall in its tracks the legal machinery he has just set in motion"—in other words, a showing of no bad faith. *Id.* (citing *Lamp*, 366 A.2d at 889).

Ten years later, the Supreme Court refined *Lamp* to require that plaintiffs make a "good-faith effort to effectuate notice of commencement of the action." *Id.* at 665–66 (quoting *Farinacci v. Beaver Cty. Indus. Dev. Auth.*, 511 A.2d 757, 759 (1986)). Exactly what amounted to a "good-faith effort" by plaintiffs remained an open question until 2005, when the Supreme Court in *McCreesh* held that a plaintiff's "initial procedurally defective service" will be excused "where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced." *Id.* at 666. The Court concluded that this "flexible approach . . . sufficiently protects defendants from defending against stale claims without the draconian action of dismissing claims based on technical failings that do not prejudice the defendant." *Id.*

To clarify what constitutes "actual notice," the *McCreesh* Court distinguished between two kinds of cases. *See* 888 A.2d at 664 n.17. In one group were cases like *McCreesh*, where defendants had "actual notice of the commencement of litigation, albeit via technically deficient service." The other group was characterized by cases like *Farinacci*, where the defendant had notice of the "potential for litigation, but did not have actual notice of the commencement of litigation." *Id.* Thus, for actual notice to exist, defendants must receive notice of the commencement of litigation, not just the potential for it. *See id.*

Importantly for our purposes, the Supreme Court has held that a plaintiff is "bound by the actions (or inactions) of his attorney." *See Farinacci*, 511 A.2d at 760 (dismissing plaintiffs' action for failure to show a good-faith effort to serve the writ where the four-week delay "was attributable only to counsel's faulty memory"); *accord Witherspoon v. City of Philadelphia*, 768 A.2d 1079, 1083 (2001) (holding that plaintiff was bound by the actions of counsel and the process server where plaintiff's counsel delivered the writ to a process server, but that process server made only one failed attempt at service).

Applying these decades of state jurisprudence here, Major's failure to serve Defendants would only be excused, and the statute of limitations thus tolled, if she made a good-faith effort to serve them, such that they had actual notice of the commencement of Plaintiffs' case, and if they were not otherwise prejudiced. *See McCreesh*, 888 A.2d at 664. Unfortunately, the record does not show that this standard was met. It is undisputed that Major's office made no effort whatsoever to serve Defendants until the end of 2017, more than a year after the initial writ was issued and the statute of limitations had run. Major asserts that, despite "an unintentional oversight," the affidavit from Ms. Diaz "indicat[es] the good faith efforts to serve the defendants in this matter by Plaintiff's Counsel." Pls.' Resp. 5. Ms. Diaz's affidavit portrays a capable but

overburdened legal assistant, attempting—and failing—to do the work of several people, including an attorney, in order to keep her employer current on essential case events and deadlines.[2] In short, Major's brief and the accompanying affidavit show that the delays in this case may not have been in bad faith but were instead an unfortunate, predictable product of an understaffed office. *See id.* at 5, 7–8. Still, counsel shows no attempt to make service, let alone good faith attempts.

Even if I were to give Pennsylvania precedent the most liberal interpretation possible, counsel cannot explain or excuse the fact that even after a complaint was filed in March 2017, some five months after the never-served summons, there was still no attempt to serve it until December. The suggestion that the scheduling of a case management conference and issuance of a scheduling order somehow reassured counsel's staff does not withstand scrutiny, as no counsel for any of the defendants entered an appearance, and the case management order docketed on March 21, 2017 specifically required counsel of record "to serve a copy of this order upon all unrepresented parties." Pls.' Resp., Ex. 3, ECF No. 10-3 at 6, 7. Thus, had counsel read the order, the effect would not have been to "reassure," but to underscore the fact that no defendant had been served. At oral argument, for the first time anywhere on the record in this case, counsel alleged that after the case management conference she immediately called the City Solicitor's Office, explained her oversight, and the unidentified lawyer for the City with whom she spoke represented that there would be no problem in proceeding. I do not find this credible, particularly where, when the City was finally served in December, after removal of this action, the City immediately moved to dismiss.

---

[2] Notably, Major offers no explanation—directly or through her staff—to explain why she sat on this case for more than a year and left filing to the last day of the statute of limitations. Nor could she.

The two cases counsel cites do not help her position. *See* Pls.' Resp. 7–8. One is not relevant, as it discusses what constitutes a "good-faith" effort only in the context of an alternative service motion, with no mention of Rule 401, actual notice, or statutes of limitations. *See City of Phila. Water Rev. Bureau v. Towanda Properties, Inc.*, 976 A.2d 1244, 1249 (Pa. Commw. Ct. 2009). The other is *Ramsay v. Pierre*, 822 A.2d 85 (Pa Super. 2003), a pre-*McCreesh* case where the plaintiff's counsel, like Major, initiated a case just before the close of the statute of limitations period, then failed to effect proper service for several months, and the court ultimately allowed the claim to proceed. But the plaintiff in *Ramsay* was unable to effect prompt service despite his having complied with all of the relevant civil procedure rules. The court emphasized that the plaintiff "attempted to achieve service repeatedly throughout the nine-month period" and "did not sit idly or disregard his duty to ascertain [defendant's] whereabouts after the complaint was returned without service." *Id.* at 91–92. It was only because of these diligent, fully-compliant service efforts that the court found the nine-month period reasonable.[3] *Id.* Major admits that she did not comply with the services rules or make any effort to do so. So unlike the plaintiff in *Ramsay*, Plaintiffs' attorney Rania Major did in fact sit idly. As explained in detail above, the absence of bad faith is not enough. *See McCreesh*, 888 A.2d at 664; *Farinacci*, 511 A.2d at 759. Plaintiffs must have made a good-faith effort and that effort must have resulted in actual notice to defendants of commencement of the litigation—neither of which happened here.

Plaintiff also argues that, despite her forgetting to serve the writ, Defendants "were not prejudiced by lack of notice" because her communications with the City's Claims Unit in 2015

---

[3] Indeed, the *Ramsay* Court explicitly rejected the argument Major now makes: "[I]t is not necessary [that] the plaintiff's conduct be such that it constitutes some bad faith act or overt attempt to delay before the rule of *Lamp* will apply [rendering the action untimely]. Simple neglect and mistake to fulfill the responsibility to see that requirements for service are carried out may be sufficient to bring the rule in *Lamp* to bear." *Id.* at 90.

10

about Lowe's and Salaam's injuries put the City on notice. Pls.' Resp. 8 (referencing Ex. E, ECF No. 10-5). For that communication to toll the statute, though, it must amount to "actual notice" under *McCreesh*. *See* 888 A.2d at 664 n.17, 666. The letters Major's office exchanged with the Claims Unit were barebones, largely boilerplate correspondence about potential personal injury claims. They did not discuss constitutional or § 1983 claims, were directed only to the City of Philadelphia (one of several defendants in this case), and, most importantly, discussed only potential litigation. This is not enough under *McCreesh*, which requires that defendants be notified of litigation actually commenced against them—not the mere potential for it. *Id*. at 664 n. 17. Because Major made no effort to serve Defendants until more than a year after the statute of limitations had run, and because Defendants did not have actual notice of this litigation, state law provides no basis on which to excuse Major's delay.

Although Major argues only for tolling under state law, I have also considered whether federal tolling principles might apply. The remedial nature of § 1983 means that "occasionally, the state statute of limitations must be modified to promote the federal interests at bar." *Lake v. Arnold*, 232 F.3d 360, 369 (3d Cir. 2000). The Third Circuit has articulated three federal equitable tolling principles, only one of which is arguably relevant to this case; it applies "where the plaintiff has been prevented from asserting her claim as a result of extraordinary circumstances." *Kach*, 589 F.3d at 643. But even when a federal tolling principle is available, "the remedy of equitable tolling is extraordinary" and is to be used "only sparingly." *Id.* at 645. I regret that the record here, summarized in detail above, is insufficient to invoke the "extraordinary circumstances" tolling principle. The Supreme Court has cautioned that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The outcome

here is the result of counsel's basic failure to monitor the file. I cannot say it fits within the category of "extraordinary circumstances" as that concept has been defined by the Supreme Court.

In *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 241 (3d Cir. 1999), the Third Circuit applied equitable tolling in a Title VII case when the attorney failed to file a timely complaint despite the client's diligence, and misrepresented to the client that he had filed the complaint when he had not. The court concluded that such conduct went "well beyond garden variety" neglect. That the lawyer lied to the client was a core factor, but the Court further noted "first (and importantly)" that the client had been "extremely diligent in pursuing her claim." The plaintiff there promptly hired an attorney to help file her complaint, contacted the lawyer before the filing deadline, and repeatedly called him to check the progress of her case—examples of "consistent assiduousness" that weighed "heavily in favor of equitable tolling." Here, Plaintiffs' counsel, who was ordered to have her clients present for argument but did not, stated that she had no recent communication with them, and little communication since inception of the case. Consequently, I do not see *Seitzinger* as a basis for tolling the statute.

Plaintiffs' recourse now lies with a claim against counsel.

**IV. Conclusion**

Despite the compelling allegations by Plaintiffs, which undoubtedly deserved discovery and a resolution on the merits, their attorney's inaction compels me to grant the Defendants' Motion and dismiss Plaintiffs' Complaint in its entirety.

/s/ Gerald Austin McHugh
United States District Judge
